PARK CITY EDUCATION
ASSOCIATION, Plaintiff
and Appellant,

v.

The BOARD OF EDUCATION OF the
PARK CITY SCHOOL DISTRICT,
Defendant and Appellee.

No. 920688–CA.

Court of Appeals of Utah.

July 27, 1994.

Robert H. Chanin and John M. West, Washington, DC, and Michael T. McCoy, Murray, for appellant.

Brinton R. Burbidge, Blake T. Ostler, and Stuart F. Weed, Salt Lake City, for appellee.

Before BILLINGS, DAVIS and ORME, JJ.

DAVIS, Judge:

Park City Education Association (PCEA) appeals from the trial court's order granting summary judgment to the Board of Education of the Park City School District (the Board).  We reverse.

## BACKGROUND

PCEA is an association of employees of the Park City School District Board of Education representing most of the certified employees of the Board.[1] Prior to September 21, 1988, the Board had recognized PCEA as the exclusive bargaining agent for those employees.[2] On September 21, 1988, PCEA and the Board entered into a "Master Contract" covering the school years 1988–89 and 1989–90. The provisions of the Master Contract apply to "[a]ny full-time, half-time, or part-time teacher" and specify, inter alia, that the Board has agreed to pay the health insurance costs for all individuals covered by the contract. Recognizing that an individual contract will be made with each teacher, the Master Contract includes a provision that "[t]his agreement as well as all other policies duly promulgated by the Board will be referenced in each teacher's yearly contract and be deemed to be a part thereof." Finally, anticipating the possibility of future conflict between the terms agreed upon in the Master Contract and changing Board policies, paragraph 2.3 of the Master Contract provides: "In case of any direct conflict between the express provisions of this agreement and any Board of Education policy[,] practice, procedure, custom or writing not incorporated in this agreement, this agreement shall control."

Notwithstanding the provisions of the Master Contract, on June 27, 1989, the Board adopted a new policy regarding health care benefits for job-sharing[3] employees. This policy, known as "Policy GCDA" provides that "any [job-sharing] employee contracted for less than 25 hours per week will not be eligible for health and accident insurance coverage." The Board subsequently offered 20–hour employment contracts for the 1989–90 school year under the guidelines of Policy GCDA to two job-sharing teachers, Margery Hadden and Nancy Schulthess. The con-

tracts did not reference the Master Contract as required by paragraph 2.2 of that agreement. Instead, the contracts provided that the two teachers were to be bound by the rules and regulations as set forth in the policies and procedures of the Board. The Board alleges that Hadden and Schulthess "voluntarily" agreed to contracts outside the scope of the Master Contract; however, Hadden noted on her contract that her agreement to be bound under its terms was subject to the resolution of her pending "grievance." That grievance concerned the loss of health insurance benefits under Policy GCDA. Schulthess did not make a similar notation on her contract, but was also a party to the grievance.

In keeping with Policy GCDA, the Board did not provide health insurance benefits to Hadden and Schulthess for the 1989–90 school year. As a result, PCEA filed a complaint against the Board on April 12, 1990, requesting an award of damages in the amount of Hadden's and Schulthess's medical expenses for that school year along with declaratory and injunctive relief. Based upon the foregoing undisputed facts, both parties moved for summary judgment following discovery. On September 16, 1992, the trial court issued an order granting the Board's motion for summary judgment. On December 8, 1992, the court entered a Utah Rule of Civil Procedure 52(a) statement of the grounds for the court's decision. First, the court ruled that Hadden and Schulthess had elected to bargain independently with the Board and were thus not covered by the Master Contract. Second, the court ruled that the provision of the Master Contract—stating that in the case of conflict between the terms of the agreement and Board policies, the terms of the contract would prevail—was void because it impermissibly

prevent[s] the Board of Education from amending its policies regarding benefits,

1. "Certified" employees are those who hold a standard professional certificate or authorization to teach. PCEA is not the bargaining agent for supervisors, confidential employees, substitutes, per diem employees, and classified employees.

2. The Master Contract states that "[t]he Board hereby recognizes the Park City Education Asso-

ciation as the exclusive representative of all certified personnel."

3. Job-sharing is defined by Policy GCDA as "a voluntary program providing two or more employees the opportunity to share one position."

compensation, personnel, termination, and many other provisions, thus taking away the Board's ability to properly manage its affairs according to statutory requirements and standards. Moreover, such a provision would be an unlawful limitation on the Board's legislative authority. The Board of Education cannot be precluded from amending its policies, adopting additional policies, or rescinding existing policies.

This appeal followed.

## ISSUES ON APPEAL

There are two issues on appeal: (1) whether the trial court erred in holding that paragraph 2.3 of the Master Contract—which provides that the terms of that contract are to supersede any conflicting Board policies—is invalid as an unlawful limitation on the Board's legislative authority; and (2) whether the trial court erred in determining that Hadden and Schulthess elected to bargain independently for their contracts and were therefore not covered under the Master Contract.

## STANDARD OF REVIEW

■ A challenge to an order granting summary judgment "presents for review only conclusions of law because, by definition, cases decided on summary judgment do not resolve factual disputes." *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1111–12 (Utah 1991). We review the trial court's conclusions of law for correctness. *Id.*

## ANALYSIS

### Enforceability of Master Contract

■ School boards are authorized by statute to "do all things necessary for the maintenance, prosperity, and success of the schools and the promotion of education." Utah Code Ann. § 53A–3–402(17) (1994). Expressly included among those "things necessary" is the ability to enter into written employment contracts for terms of up to five years. *Id.* § 53A–3–411(1). However, a board's ability to enter into such contracts is not completely unfettered. It is well established that a board may not enter into any contract that delegates its legislative authori-

ty. As the Utah Supreme Court observed in *Salt Lake City v. International Ass'n of Firefighters*, 563 P.2d 786 (Utah 1977):

> Although the old delegation doctrine has been repudiated, there remains an underlying core of validity, which requires those who have been selected, by a given process, and from a given constituency; retain the power to make ultimate policy decisions and override decisions made by others. The complexities of budgeting and the selection of programs, are duties elected officials owe to the electorate; these policy decisions cannot be delegated....

*Id.* at 790 (footnote omitted). Consequently, "[a] municipal corporation cannot bind itself by any contract beyond the scope of its powers, and anyone contracting with the corporation is deemed to know the corporate limitations in this respect." *Miller v. School Dist. 470, Cowley County*, 12 Kan.App.2d 368, 744 P.2d 865, 868 (1987), *aff'd*, 242 Kan. 817, 752 P.2d 113 (1988).

■ In the case at bar, the trial court determined that paragraph 2.3 of the Master Contract—stating that in the event of conflict between School Board policies and the terms of the agreement, the terms of the agreement would prevail—is an unlawful limitation of the Board's legislative authority. The Board urges that this provision prevents the Board from amending its policies regarding "benefits, compensation, personnel, termination" and, as a result, the Board is no longer able to "properly and responsibly manage its affairs according to statutory requirements and standards."

The Board's position in this case is both illogical and inconsistent with its authority to enter into binding agreements. The Board correctly notes that it is limited to contracting within the scope of its powers. However, by defining the "scope of its powers" so narrowly that it has the ability to alter or amend virtually any policy despite contract provisions to the contrary, the Board is essentially contending that a governmental entity cannot be bound by *any* contract. That is, every contract between a governmental entity and a private entity or individual, whether for the provision of services, prod-

ucts, construction, or any other lawful objective, may be breached if the governmental entity has a policy reason for doing so. Therefore, the governmental entity's statutorily conferred power to enter into binding employment contracts is, following the Board's reasoning, illusory.

In addition, the Board's position in this case is not supported by case law. The Board relies primarily upon *International Ass'n of Firefighters*,[4] a case involving a provision of the Utah Fire Fighters' Negotiation Act that provided for mandatory, binding arbitration of issues not resolved in bargaining between the firefighters' organizational representative and municipal authorities. The court invalidated the Act because if a bargaining impasse occurred, the ultimate decisions regarding what contract terms would be included in the collective bargaining

agreement would be placed in the hands of a panel of arbitrators who were unaccountable to the public. *Firefighters*, 563 P.2d at 789.

The instant case is inapposite to *Firefighters*. The Board did not delegate any decision-making ability to PCEA or any other body regarding which teachers would be accorded health insurance benefits, or what the scope of these benefits would be. Instead, the Board agreed to enumerated benefits for a specified class of individuals. As the Supreme Court of Colorado noted in *Littleton Educ. Ass'n v. Arapahoe County Sch. Dist.*, 191 Colo. 411, 553 P.2d 793 (1976) (en banc):

> The defect in the board's position that the subject agreement constitutes an unlawful delegation of authority and places control of a school system in the hands of an employee organization reflects a basic

---

4. The Board also cites *People's Advocate, Inc. v. Superior Court*, 181 Cal.App.3d 316, 226 Cal. Rptr. 640 (1986) and *City and County of San Francisco v. Patterson*, 202 Cal.App.3d 95, 248 Cal.Rptr. 290 (1988), for the proposition that the Board cannot enter into a contract that restricts its ability to alter or amend its policies in the future. In *People's Advocate*, the court struck down an initiative adopted at a recent election that would govern the content of future legislation because "[n]either house of the Legislature may bind its own hands or those of future Legislatures by adopting rules not capable of change." *People's Advocate*, 226 Cal.Rptr. at 647. In *Patterson*, a proposed initiative ordinance limiting power of all future boards of education to sell or release real property was struck down on the grounds that if it is unlawful for the current board to bind all future boards to a particular policy, then the electorate is similarly barred from doing so. *Patterson*, 248 Cal.Rptr. at 296. The instant case is distinguishable from *Patterson* and *People's Advocate*. There is a significant difference between entering into a binding employment contract for a fixed period of time and enacting legislation that would bind all future boards to a particular policy.

Two other cases cited by the Board, *Raines v. Independent Sch. Dist. No. 6*, 796 P.2d 303 (Okla. 1990), and *Mindemann v. Independent Sch. Dist. No. 6*, 771 P.2d 996 (Okla.1989), invalidate provisions in collective bargaining agreements that require that teacher grievances be submitted to *binding* arbitration. The reasoning behind the court's decisions in these cases was that the power to discipline, suspend, or dismiss an employee is vested in the school board or an administrator under the board's supervision pursuant to statute. Therefore, the court concluded, "A school board's abdication of these responsibilities, by its agreement to submit these decisions to

binding arbitration, is repugnant to the statutory policy implicit in those sections." *Raines*, 796 P.2d at 304. There is no statutory prohibition against entering into a contract fixing the conditions of employment in this case, nor does the Master Contract provide for mandatory binding arbitration of teacher grievances. Consequently, the holdings in *Raines* and *Mindemann* are not relevant.

Finally, the Board cites *City and County of San Francisco v. Cooper*, 13 Cal.3d 898, 120 Cal.Rptr. 707, 534 P.2d 403 (1975), a case with facts more similar to the facts of the instant case. *Cooper* involved a "resolution" governing employee work terms adopted by the Board of Education after conference with the teachers' union. One provision of the resolution specified that the Board could not alter the terms of the resolution without *approval* from the union. The court struck down this provision on the ground that it represented unlawful delegation of decision-making authority. However, the court also held that the salary increases adopted by the resolution were valid and enforceable and could not be unilaterally changed by the Board because "such salary schedules become an integral part of each teacher's employment contract." *Id.* 120 Cal. Rptr. at 728 n. 18, 534 P.2d at 424 n. 18. Therefore, while the court struck down the provision which protected the salary increases by preventing the Board from altering the terms of the resolution absent union approval, it also held that the Board was not permitted to renege on its promise to raise the salaries as agreed. The Master Contract in the instant case contains no provision requiring PCEA approval of policy changes; we decline to hold that breaching the clear and unambiguous terms of the Master Contract by making a policy change is tantamount to requiring prior approval of PCEA.

misperception of the negotiations process. Negotiations between an employer and an employee organization entered into voluntarily, as in this case, do not require the employer to agree with the proposals submitted by employees. *Rather, the ultimate decisions regarding employment terms and conditions remain exclusively with the board. While the employees' influence is permitted and felt, the control of decision-making has not been abrogated or delegated.*

*Id.* 553 P.2d at 796 (emphasis added); *see also Rockey v. School Dist. # 11, El Paso County,* 32 Colo.App. 203, 508 P.2d 796, 797 (1973) ("While the school district, a corporate body, cannot enter into a collective bargaining agreement whereby it delegates its responsibility and discretion in employing personnel, the fact that the board entered into a collective bargaining agreement relating to the employment of teachers does not mean per se that it has delegated its authority or decision-making power."); *Louisiana Teachers' Ass'n v. Orleans Parish Sch. Bd.,* 303 So.2d 564, 568 (La.App.1974) (holding that collective bargaining does not constitute unlawful delegation of decision-making authority because "[t]he Board ... has only decided to bargain collectively with respect to terms and conditions; it retains the right of final decision as to what terms and conditions it will agree to. Indeed, it retains the right to decide not to agree at all."), *cert. denied,* 305 So.2d 541 (La.1975); *Dayton Classroom Teachers Ass'n v. Dayton Bd. of Educ.,* 41 Ohio St.2d 127, 323 N.E.2d 714, 718 (1975) ("Neither reason nor authority prohibits a board of education from manifesting its policy decisions in written form and calling the writing an agreement or contract. It can not be seriously argued that entering into such agreement is a departure from, or surrender of, independent exercise of a board's policy-making power."); *Lindon City v. Engineers Constr. Co.,* 636 P.2d 1070, 1075 (Utah 1981) (upholding provision in collective bargaining agreement calling for arbitration of disputes arising out of contract as not involving an *unlimited* "delegation of ... discretion to an ad hoc panel of private persons to make basic governmental policy"); Richard F. Dole, Jr., *State and Local Public Employee Collective Bargaining in the Absence of Explicit Legislative Authorization,* 54 Iowa L.Rev. 539, 543–44 (1969) ("Because a public employer does not have to agree to an employee representative's proposals, a public employer delegates no authority to a representative by attempting to negotiate a collective bargaining contract. Furthermore, any agreement that results is an exercise of discretion rather than a delegation of authority by the public employer.")

The weight of authority supports PCEA's position that entering into a binding employment contract containing the terms the Board claims are unenforceable does not involve an unconstitutional delegation of decision-making authority. Further, common sense dictates that the power to enter into a contract includes the obligation to be bound by the contract.[5] Accordingly, we reverse the trial court's order invalidating paragraph 2.3 of the Master Contract.

### Separate Contracts

The Board also contends that the trial court correctly determined that the terms of the Master Contract are not binding in this case because Hadden and Schulthess *"voluntarily* elected to contract with the district directly and signed contracts with the Board individually."[6] (Emphasis added). The

---

**5.** Our conclusion is consistent with provisions of 1994 legislation establishing a Centennial Schools Program. Utah Code Ann. §§ 53A–1a–301 to –304 (1994). This voluntary program provides that the school directors of a participating school may "request a waiver from the local board of education of any provision in an agreement or contract between the district and its employees that prevents or hinders the school from achieving its performance goals." *Id.* § 53A–1a–302(3)(a). However, this waiver is "subject to agreement between the local board and the entity that represented the employees in obtaining the agreement or contract referred to in Subsection (a)." *Id.* § 53A–1a–302(3)(b). If a school board were free to unilaterally change policies to obviate collective bargaining agreements, § 53A–1a–302(b) would be superfluous.

**6.** The Board implies that the Master Contract was not controlling when Hadden and Schulthess signed their contracts because "the section regarding benefits was under renegotiation." However, PCEA points out in its reply brief, and the Board apparently agrees, that the question of

Board notes that Utah is a "right to work" state, and that employees have the right to bargain collectively and "the right to refrain from any or all such activities." Utah Code Ann. § 34–20–7 (1988). This "right to refrain" from bargaining collectively has been interpreted by the Board to mean that employees have been granted the right to enter into separate contracts with an employer, despite the existence of a collective bargaining agreement. In this case, because Hadden and Schulthess knew that under the contracts offered by the Board they were not entitled to certain benefits and nonetheless agreed to enter into these contracts, the Board argues that the signed and executed contracts are undisputed evidence of their intent to contract individually with the Board. The Board takes this position notwithstanding the provisions of paragraphs 2.2 and 2.3 of the Master Contract and notwithstanding the undisputed fact that Hadden and Schulthess were grieving the denial of benefits provided by the Master Contract at the time their contracts were executed and that Hadden specifically referred to the grievance in her contract.

The trial court's reliance on section 34–20–7 in support of its determination that Hadden and Schulthess exercised their right to bargain individually is misplaced. Even authority cited by the Board states quite clearly that public employees are not covered by the state's labor laws. Interpreting the declaration of policy in Utah's "Little Norris–La Guardia Act," Utah Code Ann. § 34–19–1 (1988), the Utah Supreme Court observed,

> Numerous jurisdictions, construing statutes [state Labor Relations Acts] similar to ours, have uniformly rejected the concept that such policy statements contained therein apply to public employees. *In the absence of explicit legislative language, statutes governing labor relations between employers and employees apply only to private industry and not to the sovereign or its political subdivisions.*

*Westly v. Board of City Comm'rs,* 573 P.2d 1279, 1280 (Utah 1978) (footnote omitted) (emphasis added). The supreme court later interpreted *Westly* as holding that municipal employees do not have a statutory right to bargain collectively. *Pratt v. City Council,* 639 P.2d 172, 174 n. 10 (Utah 1981).[7]

Because section 34–20–7 is inapplicable to public employees, we must look elsewhere to determine whether public employees may bargain independently with their employer when there is a collective bargaining agreement in place purporting to cover these employees. While the National Labor Relations Act (the NLRA) is also inapplicable to a state or its political subdivisions, courts presented with collective bargaining issues in the public sector have turned to cases decided in the context of the NLRA for guidance. *Jefferson County Sch. Dist. v. Shorey,* 826 P.2d 830, 837 (Colo.1992) ("Although public employees are not subject to the requirements of federal labor law, federal decisions nonetheless offer guidance in resolving similar issues in the public sector."); *Buhl Educ. Ass'n v. Joint Sch. Dist. No. 412,* 101 Idaho 16, 607 P.2d 1070, 1075 (1980) (noting that although NLRA does not apply to state or its political subdivisions, analysis of collective bargaining as set forth in Supreme Court case law "does provide sound guidelines").

In *Retherford v. AT & T Communications,* 844 P.2d 949 (Utah 1992), the Utah Supreme Court was presented with the issue of whether an individual agreement providing more rights than those available under a collective bargaining agreement was enforceable. The court analyzed the issue in the context of interpretation of a collective bargaining agreement which did not involve public employees. The court noted that it is well established under federal labor law that "al-

---

*who* was entitled to benefits was not under renegotiation, and the Master Contract term requiring health insurance for all employees covered remained in full force and effect.

7. We further note that even if there were a right to contract separately with an employer and waive benefits conferred by a collective bargaining agreement, the undisputed facts of this case do not suggest that such a right was exercised here. Both Schulthess and Hadden were part of a grievance process disputing the validity of Policy GCDA at the time they "voluntarily elected" to contract separately, and Hadden expressly noted on her contract that her signature was "[s]ubject to determination of the grievance which is presently being heard."

though any employee can reach a separate agreement with the employer, that separate contract must be consistent with the collective bargaining agreement negotiated by the union.... Thus, inconsistent separate agreements are not enforceable." *Id.* at 969 (citing *J.I. Case Co. v. NLRB*, 321 U.S. 332, 339, 64 S.Ct. 576, 581, 88 L.Ed. 762 (1944); *accord NLRB v. Allis–Chalmers Mfg. Co.*, 388 U.S. 175, 180, 87 S.Ct. 2001, 2006, 18 L.Ed.2d 1123 (1967)). The court discussed several federal decisions, noted that even separate agreements more favorable to the employee than the collective bargaining agreement were unenforceable, and held that

> the policy underlying these decisions is sound. Nothing could undermine the authority of a collective bargaining unit more thoroughly than allowing individuals or cohorts of employees to enforce separate contracts that were more advantageous to those employees than was the collective bargaining agreement itself.... Accordingly, we decline to upset this balance by allowing individual agreements to undercut the union as the bargaining agent.

*Retherford*, 844 P.2d at 970 (citing *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285–86 (9th Cir.1989); *Eitmann v. New Orleans Pub. Serv., Inc.*, 730 F.2d 359, 362–63 (5th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984).

In *J.I. Case*, the Supreme Court provided a detailed discussion of the purpose and scope of collective bargaining. With respect to the interplay between a collective bargaining agreement and individual contracts, the Court stated:

> Individual contracts, no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor to exclude the contracting employee from a duly ascertained bargaining unit; nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement.... Wherever private contracts conflict with its functions, they obviously must yield or the Act would be reduced to a futility.
>
> It is equally clear since the collective trade agreement is to serve the purpose contemplated by the Act, *the individual contract cannot be effective as a waiver of any benefit to which the employee otherwise would be entitled under the trade agreement. The very purpose of providing by statute for the collective agreement is to supersede the terms of separate agreements of employees with terms which reflect the strength and bargaining power and serve the welfare of the group.* Its benefits and advantages are open to every employee of the represented unit, whatever the type or terms of his pre-existing contract of employment.

*Id.* 321 U.S. at 337–38, 64 S.Ct. at 580–81 (emphasis added); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395–97, 107 S.Ct. 2425, 2431–32, 96 L.Ed.2d 318 (1987) (further explaining *J.I. Case* holding); *accord Richmond, Fredericksburg, & Potomac R.R. Co. v. Transportation Communications Int'l Union*, 973 F.2d 276, 282 (4th Cir.1992); *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 (9th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991).

■ In the case at bar, the Park City educators, including Hadden and Schulthess, elected to be represented exclusively by PCEA in contract negotiations. In turn, the Board elected to conduct contract negotiations with PCEA as the exclusive bargaining agent for those educators.[8] The Master Contract agreed upon by PCEA and the Board covered by its terms all full-time, half-time, or part-time teachers subsequently hired by the Board, and accorded health insurance benefits to all these teachers. Therefore, the Board's decision to negotiate individually with Hadden and Schulthess for employment contracts without health insurance benefits constituted two direct breaches of the Master Contract. We hold that these

8. The Board has expressly stated that its power to enter into a collective bargaining agreement is not at issue in this case and we therefore do not reach this issue. However, we note that recent legislation clearly presupposes the existence and legality of collective bargaining in the context of hiring educators. *See* Utah Code Ann. §§ 53A–6–401 to –402 (1994).

breaches cannot be justified by an employee's "right" to bargain individually with the employer. Thus, whatever the scope of the right of an employee to bargain individually may be, it does not include the right to waive benefits conferred by a collective bargaining agreement covering that employee. The analysis in *Retherford* and *J.I. Case* is compelling and applicable to this case. To permit such individual contracts would make collective bargaining futile; we decline to do so.

## CONCLUSION

After voluntarily entering into a binding Master Contract with PCEA, the Board subsequently breached two of its terms. The Board unilaterally changed the contract term regarding health insurance benefits for job-sharing teachers, and coerced Hadden and Schulthess to sign individual contracts purporting to waive the benefits of the Master Contract. The mere fact that the Board agreed to be bound by certain contractual terms does not constitute an improper delegation of legislative authority. The Board did not relinquish to a private entity the ability to make policy decisions, nor did it bind itself and future boards indefinitely to a particular policy. Therefore, the trial court erred by invalidating the provision in the Master Contract stating that in case of conflict between Board policy and the terms of the Master Contract, the latter shall prevail. The contracts signed by Hadden and Schulthess incorporated a policy conflicting with the term in the Master Contract regarding health insurance benefits. Accordingly, pursuant to paragraph 2.3 of the Master Contract, the conflicting Board policy is not applicable to employees covered by the Master Contract during its term.

We further hold that where those employees have selected an exclusive bargaining agent, and where that agent has entered into a collective bargaining agreement with the employer, neither they nor the employer are free to bargain individually for inclusion of terms in an individual contract that contravene those in the collective bargaining agreement. Thus, Hadden and Schulthess were not in a position to bargain individually and

enter into a separate agreement with the Board even if the facts supported their desire to do so. For the foregoing reasons, we reverse and remand with instructions to enter summary judgment for PCEA.

BILLINGS, J., concurs.

ORME, Associate Presiding Judge (concurring in part and concurring in the result in part):

I concur in the court's opinion except as to the section entitled "Separate Contracts." That section deals with whether public employees have the right to bargain individually with public employers even though a collective bargaining agreement is in effect. I see no need to reach this issue.

The sound result reached by the majority can readily be premised solely on the ground alluded to in footnote 7 of the main opinion. Whether or not a public employee is entitled to contract individually and waive certain rights obtained by the employee association in its collective bargaining agreement, no such waiver occurred in this case. The Master Contract between the PCEA and the Board specifically accorded health insurance benefits to all full-time, half-time, or part-time teachers subsequently hired. Hadden and Schulthess were hired as half-time teachers and thus entitled to benefits under the Master Agreement. As a matter of public policy as well as sound contract interpretation, any waiver of such rights would have to be intentional, explicit, and unambiguous rather than being left for inference. *See Hunter v. Hunter*, 669 P.2d 430, 432 (Utah 1983). I would require such a waiver to be expressed in the individual employment contract, to specifically reference the collective bargaining agreement, and to clearly state the employee's recognition of rights or benefits available thereunder and his or her decision to waive those rights or benefits. No such thing happened here. In contrast to waiving their rights, both employees consistently disputed the Board's attempt to deprive them of their health benefits.

Accordingly, I join the majority in reversing the trial court's decision depriving Had-

den and Schulthess of health benefits. However, I do so based not on their legal inability to separately contract with their employer, but upon the fact that it has not been shown that they intended to contract outside the collective bargaining arrangement and waive important benefits otherwise available to them.