Joseph W. O'KEEFE, Jr., Petitioner,

v.

**UTAH STATE RETIREMENT BOARD, Respondent.**

No. 950742–CA.

Court of Appeals of Utah.

Dec. 12, 1996.

Brian R. Florence, Ogden, for Petitioner.

Kevin A. Howard, Salt Lake City, for Respondent.

OPINION

Before BENCH, GREENWOOD and WILKINS, JJ.

GREENWOOD, Judge:

Joseph W. O'Keefe, Jr. (petitioner) seeks review of the State Retirement Board's (the Board) adoption of the decision of an Administrative Hearing Officer (AHO), refusing to accept retirement system contributions from petitioner's employer, Ogden City, for hours petitioner worked in excess of forty hours per week. We affirm.

BACKGROUND [1]

Petitioner is a peace officer employed by Ogden City throughout the entire period of this controversy. On July 1, 1985, Ogden City initiated a program whereby its peace officers, under certain prescribed and agreed upon circumstances, could be required to work more than forty hours per week. In 1989, Ogden City and its peace officer employees, including petitioner, reached an agreement to treat any hours worked in excess of forty hours per week, up to forty-three hours per week, in either of two ways: (1) the peace officers could use the three hours in question (commonly referred to as "GAP" time) as compensatory time, and Ogden City would not pay compensation for the GAP time; or (2) they could treat the GAP time as regular work hours, paid at regular, not overtime rates, and Ogden City would make retirement contributions on this additional compensation.[2] If allowed by the Board, the effect of the additional compensation and retirement contributions accrued in petitioner's final three years of employment would increase his monthly retirement allowance by $122.34 to $124.68 per month, depending on petitioner's retirement date.

In 1990, Ogden City began sending employer and employee contributions to the Utah Retirement Systems (URS) for those employees who chose to treat the GAP time worked as "regular compensation." URS received and credited these contributions to the appropriate participating members' accounts,

---

1. Our recitation of the facts, though paraphrased in part, is as stipulated to by the parties and submitted to the AHO as the factual basis for the determination of this case.

2. The Fair Labor Standards Act provides a limited exemption from the normal overtime requirements for public safety officers. *See* 29 U.S.C.A. § 207(k) (West Supp.1996). Ogden City's compliance with this provision is not at issue in this case.

including petitioner's. In 1991, due to an administrative oversight, Ogden City sent no GAP time contributions to URS. In 1992, Ogden City forwarded the required contributions for both 1991 and 1992. After receipt of the 1992 contributions, URS determined that the GAP time contributions were ineligible for retirement fund purposes, and refunded them to Ogden City for the appropriate years.

During the period from 1992 to the hearing date, petitioner asserted that both the original 1990 contributions and subsequent GAP time contributions were eligible and should not have been refunded. URS, on the other hand, treated the contributions as ineligible, from the time it had actual knowledge of the GAP time issue. Actual knowledge did not occur until sometime in 1992, when an employee sought to retire with GAP time wages included as part of his compensation.

During this same period, URS officials, Ogden City representatives, petitioner, and others similarly situated, met in an attempt to resolve their differences. At these discussions, URS agreed to conditionally accept GAP time contributions, pending formulation of a permanent policy covering GAP time contributions. Petitioner, nevertheless, believed that a permanent policy had been adopted and that URS was accepting the contributions unconditionally. All parties agreed to request that the Board's actuary, Wyatt and Associates, determine any actuarial impact which would result from including GAP time wages in compensation for retirement purposes.

The actuary responded to URS on June 2, 1994, and stated as follows:

As explained to us, Ogden police officers have a 43–hour work week. However, officers are allowed a choice between (i) taking direct pay for the three hours over 40, or (ii) taking this time as additional comp time. Most officers take the time as comp time, but as they approach retirement, officers can and do switch to taking this as pay. By doing so, they increase their Average Annual Compensation, resulting in a higher retirement benefit.

This policy increases the employer's contribution rate from 9.8% to 11.7%. Our calculation assumes that all members elect to maximize their retirement benefit—i.e., they will be able to plan well enough in advance to increase their retirement benefits by 7.5% (the ratio of the 3 extra hours to the 40 hours they were being paid for earlier).

On July 12, 1994, URS notified petitioner of its decision that any hours over forty per week would be considered overtime and thus ineligible for calculating retirement benefits. URS reportedly based its decision on the actuary's report and its determination that "any administrative, i.e., URS decision to include GAP time would indeed be adding a benefit with a potential cost to all employers and employees, not just to Ogden City and its employees, should be decided by the Legislature, not URS." URS then resolved to permanently refuse to accept GAP time contributions.[3]

The AHO affirmed URS's decision to refuse GAP time contributions. The Board adopted the AHO's Findings of Fact, Conclusions of Law and Order of Denial as its order. Petitioner now seeks review of that decision.

## ISSUES ON APPEAL

Petitioner raises three issues on appeal: (1) did the Board err in determining that the GAP time was "overtime" for retirement purposes; (2) is the Board equitably estopped from denying petitioner's GAP time contributions; and (3) did the Board's decision interfere with petitioner's right to contract with his employer?

## STANDARDS OF REVIEW

 "In the absence of an express or implied grant of discretion to an agency to interpret statutory language, this court reviews an agency's statutory construction as a question of law under a correction-of-error standard." *Allred v. Utah State Retirement Bd.*, 914 P.2d 1172, 1174 (Utah App.1996).

---

3. Apparently, a small number of Ogden peace officers actually received a retirement allowance with GAP time included. URS has agreed to honor those retirement arrangements.

Because the statute in question contains no express or implied statutory grant of discretion to the agency, we review the Board's interpretation for correctness. *See id.* (construing similar provisions elsewhere in state retirement act). We review the Board's determination on the issue of equitable estoppel for correctness, affording a degree of deference to the agency. *See Trolley Square Assocs. v. Nielson,* 886 P.2d 61, 65 (Utah App. 1994). Finally, resolution of petitioner's claim of interference with contract requires us to assess the statutory authority of the Board and is thus a question of law which we review for correctness. *See generally Park City Educ. Ass'n v. Board of Educ.,* 879 P.2d 267, 269 (Utah App.), *cert. denied,* 890 P.2d 1034 (Utah 1994).

## ANALYSIS

### I. Meaning of "Overtime"

■ The central issue in this case is one of statutory interpretation. We must determine what "overtime" means for purposes of the Public Safety Retirement Act (PSRA), the retirement act applicable to peace officers. Utah Code Ann. §§ 49–4–101 to 49–4–704 (1994 & Supp.1996). This determination is essential because the PSRA specifically excludes overtime wages from compensation considered for purposes of calculating retirement benefits. The statute provides:

(a) "Compensation," "salary," or "wages" means the total amount of payments which are currently includable in gross income made by an employer to an employee covered under the retirement system for services rendered to the employer as base income. Base income shall be determined prior to any salary deductions or reductions for any salary deferral or pretax benefit programs authorized by federal law.

(b) "Compensation" includes performance-based bonuses and cost-of-living adjustments.

(c) "Compensation" does not include:

(i) overtime....

*Id.* § 49–4–103 (Supp.1996). We note that while "overtime" appears to be a critical term for purposes of the Utah Public Employees Retirement System—the Utah Legislature specifically chose to exclude overtime from compensation in the Public Safety and Firefighter's Retirement Acts while including it in others [4]—it is undefined by Title 49 [5] or the various public employee retirement acts, including the PSRA, contained therein. Accordingly, we turn to familiar principles of statutory construction for guidance.

We begin by examining the statute's plain language and resort to other methods of statutory interpretation only if the language of the statute is ambiguous. *State v. Vigil,* 842 P.2d 843, 845 (Utah 1992). In examining the plain language of the statute, we attempt to give meaning to each part of the statute so as to give effect to all of the statutory terms. *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991). If doubt remains, "the court should analyze the act in its entirety and harmonize its provisions in accordance with the legislative intent and purpose." *In re Worthen,* 926 P.2d 853, 866 (Utah 1996) (quotation marks and citations omitted). Within these confines, we attempt "'to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve.'" *Sullivan v. Scoular Grain Co.,* 853 P.2d 877, 880 (Utah 1993) (quoting *Reeves v. Gentile,* 813 P.2d 111, 115 (Utah 1991)).

The applicable version of the Utah State Retirement Act states that "title [49] shall be liberally construed to provide maximum benefits and protections." Utah Code Ann. § 49–1–102 (1994). This statement, however, provides us little guidance in interpreting the

---

4. *Compare* The Public Employees' Retirement Act, Utah Code Ann. § 49–2–103(2)(c) (1994) *and* The Public Employees' Noncontributory Retirement Act, Utah Code Ann. § 49–3–103(2)(c) (1994) *with* The Public Safety Retirement Act, Utah Code Ann. § 49–4–103(1)(c) (Supp.1996) *and* The Public Safety Noncontributory Retirement Act, Utah Code Ann. § 49–4a–103(1)(c)

(Supp.1996) *and* The Firefighters' Retirement Act, Utah Code Ann. § 49–5–103(1)(c) (1994).

5. The PSRA is contained in Title 49 of the Utah Code, which also establishes the Board and provides for administration of retirement funds for various categories of public employees. Utah Code Ann. § 49–1–101–701 (1994 & Supp.1996).

language in question; allowing petitioner's overtime to be included would provide maximum benefits to him, whereas excluding it would arguably provide maximum protections to the system as a whole.

The stated purpose of the PSRA is to establish a retirement system for public safety employees which provides the following:

(1) a uniform system of membership;

(2) retirement requirements;

(3) benefits for public safety employees;

(4) funding on an actuarially sound basis;

(5) contributions by employers and employees; and

(6) economy and efficiency in public service.

*Id.* § 49–4–102 (1994). Neither party has satisfactorily demonstrated that its interpretation serves these stated purposes.[6]

We then turn to the PSRA as a whole, for assistance in defining "overtime." The definitions section of the PSRA, which includes the definition of "compensation" excluding overtime, also defines "full-time service" as "2,080 hours a year," i.e., forty hours per week. *Id.* § 49–4–103(3) (Supp.1996). Petitioner argues that this provision is only meant to establish a base requirement for inclusion in the system. *See id.* § 49–4–203 (Supp.1996). However, there is nothing in the PSRA which so limits application of the definition of "full-time service." We agree with the Board, that the only reasonable construction of the definitions of compensation and full-time service, looking at the PSRA in its entirety, is that work in excess of forty hours per week exceeds full-time and is therefore overtime and cannot be included in compensation in determining retirement benefits. In other words, by clearly defining what is full-time, the PSRA has set a boundary which also defines overtime. This is consistent with standard dictionary definitions. "Full-time" is "the amount of time considered the normal or standard amount for working during a given period (as a day,

week, or month)," *Webster's Third New International Dictionary* 919 (1986), while overtime is that "in excess of ... the regular working time," *id.* at 1611. Therefore, the Board did not err in determining that petitioner's GAP time should properly be considered "overtime" under the PSRA.

We further believe the Board correctly observed that the ultimate decision about whether to accept retirement contributions on overtime for some, but not all, public employees, is more properly left to the legislature. The benefits for various classes of public employees have been determined by the legislature through discussions and negotiations with the employing entities, and any changes to those benefits should occur in a like manner.

## II. Equitable Estoppel

■ Petitioner next asserts the Board should be equitably estopped from refusing his GAP time contributions. We disagree. "[I]t is well settled that equitable estoppel is only assertible against the State or its institutions in unusual situations in which it is plainly apparent that failing to apply the rule would result in manifest injustice." *Holland v. Career Serv. Review Bd.*, 856 P.2d 678, 682 (Utah App.1993); *see also Anderson v. Public Serv. Comm'n*, 839 P.2d 822, 827 (Utah 1992); *Utah State Univ. v. Sutro & Co.*, 646 P.2d 715, 718 (Utah 1982); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979). This is not such a case.

■ The AHO specifically addressed petitioner's estoppel claim and correctly identified the following elements of estoppel: (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first par-

---

**6.** The Board asserts that accepting GAP time contributions would adversely affect the actuarial soundness of the retirement system, apparently relying on the actuary's response to support that assertion. The actuary's report identifies the impact on employer and employee contributions and on retirement benefits, but does not describe in any more detail the actuarial effect, nor does it conclude that funding would be actuarially unsound. Therefore, there is insufficient evidence in the record before us to support that argument.

ty to contradict or repudiate such statement, admission, act, or failure to act. *See, e.g., Eldredge v. Utah State Retirement Bd.,* 795 P.2d 671, 675 (Utah App.1990). The AHO found, and we agree, that petitioner has not carried his burden of establishing estoppel because, even if he did reasonably believe that the GAP time contributions were being accepted nonconditionally, he also knew prior to his retirement that the Board had decided to reject GAP contributions. Under these circumstances, petitioner's estoppel claim does not rise to the level necessary to prevail against a state agency. Accordingly, we affirm the Board's refusal to invoke estoppel in this case.

### III. Interference With Contract

▮ Petitioner's final claim is that the Board's decision to refuse GAP time contributions interfered with his right to contract with Ogden City. Again, we disagree. Assuming that petitioner has an employment contract with Ogden City, which the Board disputes, Ogden City still has no authority to grant petitioner retirement benefits which conflict with the retirement statutes. *See Park City,* 879 P.2d at 269 (noting "[a] municipal corporation cannot bind itself by any contract beyond the scope of its powers" (quotation marks and citation omitted)). Ogden City may compensate its employees in any manner it wishes; however, only the legislature may determine how that compensation is to be treated under Utah's retirement acts. *See generally* Utah Code Ann. § 49–1–203 (Supp.1996) (delineating powers and duties of Board and granting "broad discretion and power to perform its policy-making functions"); *see also Ager v. Public Employees' Retirement Ass'n Bd.,* 923 P.2d 133, 139 (Colo.App.1995) (noting that while the employer "has the authority to set salary and provide compensation ... as it deems appropriate," it does not "have the authority to determine what is and is not salary for the purpose of calculating [retirement] benefits."); *Rumford v. Public Employees' Retirement Ass'n,* 883 P.2d 614, 616 (Colo.App. 1994) (same). Because the Board's exercise of its statutory authority cannot be said to have interfered with petitioner's right to con-

tract with Ogden City, petitioner's final claim of error fails.

### CONCLUSION

The Board correctly determined that petitioner's GAP time wages were excludable from compensation because they were for "overtime" under the PSRA. Thus, because the GAP time wages are not includable in compensation, petitioner is not entitled to retirement benefits based on them. In addition, we find no error in the determination that petitioner failed to bear his burden of establishing equitable estoppel against a state agency. Finally, the Board did not interfere with petitioner's right to contract with his employer by exercising its statutory authority. Accordingly, the Board's decision, adopting the AHO's order, is affirmed.

BENCH, J., concurs.

WILKINS, Judge (dissenting):

I respectfully dissent.

In 1985, Ogden City began requiring its police officers to work up to forty-three hours per week as part of their regular employment. The officers could elect the method of compensation for the time worked in excess of forty hours per week. The time was either offset by compensatory time, or paid at the usual rate. Neither the officers nor the city considered this time to be overtime. Rather, both the city and the officers considered these additional three hours, and the elected form of compensation, to be part of the regular work expected of police officers and part of their base income.

Ogden City agreed to provide retirement benefits based on the three additional hours for those who elected regular compensation rather than time off. The city made retirement contributions, including contributions based on this additional time, to the Utah Retirement Systems (URS). The URS received these contributions and credited the appropriate participating members' accounts, including petitioner's account.

Seven years later, in 1992, the URS objected to the inclusion of the additional retirement contributions in members' accounts.

URS took the position that any time in excess of forty hours per week is "overtime," which is expressly excluded from the definition of "compensation" under section 49–4–103(1)(c) of the Public Safety Retirement Act (PSRA), codified at Utah Code Ann. §§ 49–4–101 to –704 (1994 & Supp.1996). If the extra hours are overtime, rather than hours for which "compensation" is paid, they cannot be included in the calculation of benefits payable to petitioner.

The determination of whether or not the hours in excess of forty hours per week are to be treated as overtime is a question of statutory construction and interpretation. *See Allred v. Utah State Retirement Bd.*, 914 P.2d 1172, 1174 (Utah App.1996) (construing provisions of another state retirement act). As noted in the main opinion, the statute in question contains no express or implied statutory grant of discretion to the agency. Therefore, we review the Board's interpretation for correctness, granting no particular deference to the Board's decision. *Id.*

Our task is not so much to determine the general meaning of "overtime" for purposes of the PSRA, as it is to determine whether or not *these particular hours* are overtime hours. Such a determination will certainly help define "overtime" as a term, but need not be an all-inclusive definition.

Overtime is not defined in the PSRA. The PSRA does, however, specifically exclude overtime from the definition of "compensation." *See* Utah Code Ann. § 49–4–103(1)(c) (Supp.1996). "Compensation," upon which benefits are calculated, is defined as "the total amount of payments which are ... includable in gross income made by an employer to an employee ... for services rendered to the employer as base income." *Id.* § 49–4–103(1)(a).

The Utah State Retirement Act mandates that Title 49, which includes the PSRA, "shall be liberally construed to provide maximum benefits and protections." *Id.* § 49–1–102(2) (1994). Therefore, the plain language of the act requires that maximum benefits and protections be construed in favor of the system's beneficiaries. *See Sullivan v. Scoular Grain Co.*, 853 P.2d 877, 880 (Utah 1993) (" 'The primary rule of statutory interpretation is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve.' " (quoting *Reeves v. Gentile*, 813 P.2d 111, 115 (Utah 1991))). Petitioner is among those beneficiaries.

I agree with my colleagues' interpretation in the main opinion that "full-time" is intended to describe the amount of time considered "normal or standard" for working during a given time period, such as a week. Normal and standard in the case of an Ogden City police officer is forty to forty-three hours per work week. Overtime is, therefore, anything in excess of their standard forty-three-hour work week.

Furthermore, overtime is commonly treated by reputable employers as time for which a premium wage is paid. In fact, various state and federal statutes through the years have so required. *See, e.g.*, 29 U.S.C. § 207 (1994) (requiring payment for employment in excess of forty hours per week "at a rate not less than one and one-half times the regular rate"); Ariz.Rev.Stat.Ann. § 23–391 (1995) (same); Utah Code Ann. § 34–30–8 (1994) (same). In this case, both petitioner and the city treated the three hours in excess of the commonly used "standard" forty-hour work week as regular time, requiring either compensation in the form of time off, or payment at the regular hourly rate. Thus, the common usage of the term "overtime" does not describe the work hours in question here.

The other possible interpretation of these hours rests on the PSRA's definition of "full-time service" under Utah Code Ann. § 49–4–103(3) (Supp.1996). My colleagues, in the main opinion, rely on this interpretation to assist them in defining what overtime means in this circumstance. While such reliance is reasonable, I simply do not agree with the conclusions reached.

The PSRA is an act which prescribes the minimum eligibility requirements for public safety employees to qualify for retirements benefits. The PSRA provides that "[a]ll employees who perform covered *public safety services* for any employing unit ... shall become members of the retirement system [as prescribed by subsections (1) through (4) ]." *Id.* § 49–4–203 (1994) (emphasis add-

ed). "Public safety service" is therefore the threshold to qualify for benefits offered under the PSRA. The PSRA provides a number of definitions for use in its interpretation and implementation. *See id.* § 49–4–103 (Supp.1996). "Public safety service" is defined as *"full-time* paid *service"* rendered by specified public safety employees. *Id.* § 49–4–103(6)(a) (emphasis added). "Full-time service" "means 2,080 hours a year." *Id.* § 49–4–103(3). The term "full-time service," however, is not used or discussed anywhere else in the PSRA.

The significance of "full-time service" is found only in its use to define other terms within the act. These terms, taken together, establish the eligibility requirements of the PSRA: 2,080 hours characterizes full-time service, full-time service in part defines public safety service, and public safety service is the statutory threshold for inclusion in the state retirement system. The statutory employment requirements of working "2,080 hours a year," providing "full-time service," in "public safety" constitutes the *minimum qualifying service* required to obtain retirement benefits under the PSRA. The plain meaning of the statutory language is that a person employed in a public safety position who works not less than 2,080 hours per year is eligible for the benefits provided by the act.

I cannot accept the argument advanced by the Board that 2,080 hours per year constitutes a *maximum* number of hours that an otherwise qualified public safety employee may apply toward benefits under the PSRA, and that anything beyond that amount constitutes overtime which is excluded. Such an interpretation is unsupported by anything contained in the PSRA. The references to full-time work are only contained in the de-

scription of which employees are eligible. *See id.* § 49–4–103(3), (6)(a). No relationship exists within the statute, or elsewhere in Utah law, linking the 2,080–hour minimum with any limitation on benefits.

In addition, the interpretation urged by the Board is inconsistent with the language of the act and language of similar acts, in which the legislature commonly requires a *minimum* number of work hours per time period to qualify for inclusion in the retirement system. *See, e.g.,* Utah Code Ann. §§ 49–2–101 to –802 (1994 & Supp.1996) (Public Employees' Retirement Act) (requiring "employee" meet the definition of "regular full-time employee" which requires employment of *"an average* of 20 hours per week or more" to qualify for benefits (emphasis added)).[1] Thus, the requirement is one of a minimum threshold, not one of maximum benefits.

I read the PSRA to require an employee to have at least 2,080 hours a year of public safety employment time in order to qualify for inclusion in the retirement system. On the basis of this interpretation, the three hours per week at issue, expected of petitioner by Ogden City as part of his normal employment, is neither "overtime" or excessive time, which is excluded from coverage under the act.

I would reverse and remand the action of the Board.

---

1. *See* Utah Code Ann. § 49–2–203 (1994) (stating all "employees," as defined under section 49–2–103, are members of retirement system); *id.* § 49–2–103(4)(a) (Supp.1996) (defining "employee," in part, as "any regular full-time employee" for calendar or school year); *id.* § 49–2–103(10)(a) (defining "regular full-time employee" as "an employee whose employment normally requires *an average* of 20 hours or more per week" (emphasis added)).