1999 UT 17

## BOARD OF EDUCATION OF ALPINE SCHOOL DISTRICT, Plaintiff and Appellee,

v.

## Janet WARD, Defendant and Appellant.

No. 980048.

Supreme Court of Utah.

Feb. 23, 1999.

Brinton R. Burbidge, Blake T. Ostler, Salt Lake City, for plaintiff.

Michael T. McCoy, Murray, for defendant.

Geoffrey W. Leonard, Salt Lake City, for amicus Alpine Education Association.

RUSSON, Justice:

¶ 1 Janet Ward appeals the district court's entry of declaratory judgment in favor of the Board of Education of Alpine School District and the court's denial of her motion for summary judgment. The district court upheld the Board's interpretation of its panel-member selection policy for termination hearings, even though the policy contained the exact language of a prior-negotiated collective bargaining agreement. We reverse.

## FACTS

¶ 2 The Board of Education of Alpine School District (the "Board") and the Alpine Education Association [1] negotiated a collective bargaining agreement. The portion of the agreement that dealt with termination of teachers stated in part:

> If an educator wishes to challenge the proposed termination, he/she may request a hearing as described in this section. The educator may not appeal directly to the Board of Education. The request must be in writing to the superintendent within ten days following the receipt of the termination notice. A hearing panel comprised of five people shall conduct the hearing. The panel shall be selected within ten days following the educator's request to the superintendent. The panel shall consist of two persons chosen by the Board of Education [and] *two persons chosen by the educator.* Those four persons shall agree on the appointment of a fifth person.

(Emphasis added.) Thus, pursuant to the collective bargaining agreement, an educator had the right to choose two persons to sit on his or her termination hearing panel. After the Board agreed to this provision, it adopted the provision's exact language as its official policy.

1. The Alpine Education Association represents the certified educators employed by the Board.

¶ 3 Janet Ward was a continuing contract educator in the Alpine School District. On June 10, 1996, the Board gave Ward notice that it intended to terminate her employment contract for cause effective June 25, 1996. Ward appealed the termination decision and requested a termination hearing. Pursuant to the collective bargaining agreement, which constitutes Ward's employment contract, Ward selected two persons to sit on the termination hearing panel.

¶ 4 A dispute then arose between the Board and Ward regarding the interpretation of the language "two persons chosen by the educator" (the "disputed language"). Ward interpreted the disputed language to mean that she could choose any two persons. The Board's interpretation, however, required the two persons selected by Ward to be current employees of the Alpine School District. Because the two people Ward selected were not employees of the District, the Board rejected her selections.

¶ 5 When the Board and Ward could not agree on the correct interpretation of the disputed language, the Board filed a complaint for declaratory relief in district court, requesting the court to declare the rights of the parties. Thereafter, Ward moved for summary judgment. The Board argued that the disputed language was official board policy, which it had broad discretion to interpret, and that interpreting its panel selection policy to require all panel members to be current employees of the District was not an abuse of that discretion. Ward argued that because the disputed language was part of her prior-negotiated employment contract with the Board, it should be interpreted using principles of contract law, i.e., according to its plain meaning. Ward argued that the plain meaning of the language "two persons chosen by the educator" was that she could choose any two persons.

¶ 6 The district court held that because the disputed language was board policy, the Board had broad discretion in interpreting that policy and that the Board did not abuse its discretion. The court thus granted a declaratory judgment in favor of the Board and denied Ward's motion for summary judgment.

¶ 7 Ward now appeals. The issue before us is whether the district court erred in deferring to the Board's interpretation of the disputed language where that language expresses official board policy, but it is also the exact language of a prior-negotiated collective bargaining agreement.

## STANDARD OF REVIEW

¶ 8 The standard of review used in reviewing a district court's legal conclusions in an entry of declaratory judgment is the same standard used in reviewing a summary judgment. That is, we review the district court's conclusions of law for correctness. *See Camp v. Office of Recovery Servs.*, 779 P.2d 242, 244 (Utah Ct.App.1989); Utah Code Ann. § 78–33–7 (1996).

## ANALYSIS

¶ 9 Section 53A–3–402 of the Utah Code enumerates the powers and duties of local school boards. Pursuant to this section, a local school board is empowered to "make and enforce rules necessary for the control and management of the district schools" and to "do all other things necessary for the maintenance, prosperity, and success of the schools and the promotion of education." Utah Code Ann. § 53A–3–402(14) & (17). School boards are thus given broad discretion in deciding how to manage their schools. Indeed, we have stated:

> "[I]n harmony with the import of the statutes [governing the authority of school boards] is the fact that it is inherent in the nature of the board's function in managing school district business that it have a broad latitude of discretion in order to carry out its objective of providing the best possible school system in the most efficient and economical way."

*Espinal v. Salt Lake City Bd. of Educ.*, 797 P.2d 412, 414 (Utah 1990) (brackets in original) (quoting *Ricker v. Board of Educ.*, 16 Utah 2d 106, 396 P.2d 416, 420 (1964)). One way school boards manage their schools is through the adoption of policy. In *E.M. v. Briggs*, 922 P.2d 754 (Utah 1996), we discussed the latitude that is given to a school

board's interpretation of its policy. We stated:

> "It should be noted here that the management, supervision and determination of policy are the prerogative and the responsibility of the school officials; and that the courts should be reluctant to enter therein; and indeed should not do so unless it is shown that the complainant was in some manner deprived of due process of law, or that the action of the board was so entirely without justification that it must be deemed capricious and arbitrary."

*Id.* at 757 (quoting *Elwell v. Board of Educ.,* 626 P.2d 460, 463 (Utah 1981)). Thus, in addition to having discretion to adopt policies in order to manage their schools, school boards have discretion to interpret those policies. However, a school board's discretion is not absolute. For example, a school board cannot interpret its policies in an arbitrary and capricious manner. Furthermore, a board can relinquish its discretion under certain circumstances.

¶ 10 In the present case, the Board focuses on the disputed language's status as board policy. It argues that because the disputed language is policy, it has broad discretion to interpret it. Thus, the Board argues, under the rule set forth in *Briggs,* it can interpret its panel-member selection policy to require that all panel members be district employees.

¶ 11 However, prior to being board policy, the disputed language was part of Ward's employment contract. By deferring to the Board's interpretation of the disputed language, the district court allowed the Board to circumvent its obligations under that contract. In essence, the Board unilaterally freed itself from being bound by the collective bargaining agreement by adopting a policy with the exact same language and then interpreting the policy in a manner inconsistent with its plain meaning. The district court's ruling ignored the power school boards have to enter into written employment contracts with its educators, *see* Utah Code Ann. § 53A–3–411, and the boards' concomitant obligation to be bound by such contracts. *See Park City Educ. Ass'n v. Board of Educ.,* 879 P.2d 267, 271 (Utah Ct.App. 1994) (stating "common sense dictates that the power to enter into a contract includes the obligation to be bound by the contract"). While school boards have broad discretion to interpret their own policies, they do not have that discretion when the policy is part of a prior-negotiated contract. In such a case, the policy's status as a contract controls and interpretation is governed by contract principles, including the plain meaning rule. Therefore, the district court erred when it deferred to the Board's interpretation of the disputed language.

¶ 12 The *Briggs* case, upon which the Board heavily relies, does not compel a contrary decision. In that case, three students had been expelled for possessing marijuana on school grounds. Pursuant to the Board's drug and alcohol policy, the consequences for such behavior included expulsion. Rather than simply expelling the students, the Board expelled them *and* provided them with homebound instructional services. *See Briggs,* 922 P.2d at 755. The students argued on appeal that because an offer of homebound services was not part of the Board's written policy, their due process rights were violated. In rejecting this argument, this court held that interpreting the policy phrase "expulsion from the school district" to include an offer of homebound services was not an abuse of the board's discretion in interpreting its own policies. *See id.* at 757. Significantly, the drug and alcohol policy involved in that case was not a part of any contract between the school board and the students. Rather, it was a policy adopted unilaterally in connection with managing schools in the district.

¶ 13 Likewise, none of the other cases relied on by the Board compels the Board's position. For example, in *Espinal,* we stated:

> "[I]f the action of the board of education is within the powers conferred upon it by the Legislature, and pertains to a matter in which the board is vested with authority to act, the courts will not review the action of such a board to substitute its judgment for that of the board as to *matters within its discretion.*"

797 P.2d at 413–14 (emphasis added) (brackets in original) (quoting *Beard v. Board of*

*Educ.*, 81 Utah 51, 16 P.2d 900, 903 (1932)). In citing this language in support of its position, the Board would have us view its "action" as interpreting its policy which, as stated above, is generally a matter within its discretion. However, the real action of the Board in the present case is the unilateral alteration of a contract provision through its own interpretation of a policy adopted after the contract was made. Simply put, the Board wishes to alter its agreement from "two persons chosen by the educator" to "two persons chosen by the educator *who are employees of the District.*" However, neither Ward nor the Alpine Education Association agreed to this, and the legislature has not conferred upon boards of education the power to unilaterally alter collective bargaining agreements.[2]

¶ 14 The action taken by the Board in the present case is similar to the action taken by the board of education in *Park City Education Ass'n.* In that case, the Park City board entered into a collective bargaining agreement with the Park City Education Association wherein the board agreed to pay the health insurance costs of any full-time, half-time, or part-time teacher. Some months later, the board adopted an official policy which provided that employees who contracted to work less than twenty-five hours per week would not be eligible for health insurance coverage. In requiring the board to comply with its negotiated contract, the court of appeals stated that by arguing "it has the ability to alter or amend virtually any policy despite contract provisions to the contrary, the [b]oard is essentially contending that a governmental entity cannot be bound by *any* contract." 879 P.2d at 269. The court of appeals correctly rejected such a contention, and we do so here. If a local school board has the power to enter into certain contractual provisions, those provisions cannot be unilaterally altered by that board through the adoption and interpretation of a policy.

¶ 15 Section 53A–8–103(1) of the Utah Code states, "A local school board shall, *by contract with its employees or their associations*, or by resolution of the board, establish procedures for dismissal of employees in an orderly manner without discrimination." (Emphasis added.) Thus, a school board has the power to establish termination procedures either by contract or by the adoption of policy. Here, the Board proceeded to do so by contract and agreed that a termination hearing panel would include "two persons chosen by the educator." The collective bargaining agreement does not limit the pool for these two persons to employees of the District; rather, it allows for the selection of "two persons." The plain meaning of the language is that the educator can choose any two persons. Of course, such persons should be reasonably capable of performing the duties with which they will be charged. In proceeding by contract to establish its termination procedures, the Board is bound by that contract and does not have the discretion it would have if interpreting a policy containing the exact same language.

## CONCLUSION

¶ 16 The district court erred in deferring to the Board's interpretation of the disputed language. We therefore reverse the district court's grant of declaratory judgment and remand the matter for proceedings consistent with this opinion.

¶ 17 Chief Justice HOWE, Associate Chief Justice DURHAM, Justice STEWART, and Justice ZIMMERMAN concur in Justice RUSSON's opinion.

---

**2.** Rather, the legislature has expressed, at least in one instance, that an alteration to a collective bargaining agreement must be subject to agreement between the parties. In establishing the voluntary Centennial Schools Program, the legislature specifically provided that "school directors may request a waiver from the local board of education of any provision in an agreement or contract between the district and its employees that prevents or hinders the school from achiev-ing its performance goals." Utah Code Ann. § 53A–1a–302(3)(a) (1997). However, while a board can thus waive provisions in collective bargaining agreements, such waivers are specifically "subject to agreement between the local board and the entity that represented the employees in obtaining the agreement or contract referred to in Subsection (a)." *Id.* § 53A–1a–302(3)(b); *see also Park City Educ. Ass'n,* 879 P.2d at 271 n. 5.