**Lamont EPPERSON, Petitioner,**

v.

**UTAH STATE RETIREMENT BOARD, Respondent.**

**No. 970075–CA.**

Court of Appeals of Utah.

Dec. 4, 1997.

---

1. The *Warth* analysis was also adopted by the Utah Supreme Court in *Utah Restaurant Ass'n,* 709 P.2d at 1163.

Suzan Pixton, Salt Lake City, for Petitioner.

Kevin A. Howard and Daniel D. Andersen, Salt Lake City, for Respondent.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Petitioner Lamont Epperson, a retired Salt Lake City firefighter, seeks review of a final order of the Utah State Retirement Board that dismissed his Request for Board Action. By means of the Request, the petitioner sought an order declaring that his former spouse, Verla Epperson, is entitled to a spousal death benefit upon his death. In dismissing the petitioner's Request, the Re-

tirement Board ruled that Utah Code Ann. § 49-5-704 (Supp.1996) creates a spousal death benefit only if a retirant is married at the time of the retirant's death. Therefore, a retirant's former spouse could become eligible for a spousal death benefit only if the retirant has remarried as of the time of his or her death. We conclude that the Retirement Board's interpretation of section 49-5-704 is incorrect and reverse its order.

## FACTS

The petitioner and Ms. Epperson were divorced on April 13, 1992, after more than forty-three years of marriage. The petitioner worked as a Salt Lake City firefighter and was married to Ms. Epperson during virtually all of his employment with the Fire Department. During the marriage, Ms. Epperson was employed outside the home only sporadically and was therefore financially dependent upon the petitioner. On September 1, 1992, less than six months after the divorce, the petitioner retired from the Fire Department and began receiving retirement benefits. After the petitioner retired, the appropriate district court entered a Qualified Domestic Relations Order (QDRO), awarding Ms. Epperson one-half of the petitioner's pension benefit and all of the spousal death benefit under the petitioner's retirement plan.[1] Under the death benefit provision in section 49-5-704, Ms. Epperson would therefore receive 75% of the pension benefit payable at the time of the petitioner's death. See Utah Code Ann. § 49-5-704(1)(a) (Supp. 1996).

Subsequently, in August 1995, the Retirement Board notified Ms. Epperson that, under its interpretation of section 49-5-704, Ms. Epperson, as the petitioner's former spouse, would not be entitled to the spousal death benefit under the retirement plan unless the petitioner has remarried by the time of his death. The petitioner appealed the

decision by filing a Request for Board Action with the Retirement Board. The Board held hearings on November 14 and 21, 1996. On December 19, 1996, the Retirement Board dismissed the petitioner's Request for Board Action and approved the Retirement Board's initial determination regarding the spousal death benefit. This petition for review ensued.

The dispositive issue before us is whether the Retirement Board correctly construed section 49-5-704 to preclude a retirant's former spouse from receiving any part of the statutory death benefit unless the retirant is remarried at the time of his or her death.[2]

## STANDARD OF REVIEW

■■■ We review the agency's statutory construction as a question of law under a correction-of-error standard unless the statute expressly or impliedly grants the agency discretion to interpret the statutory language. See O'Keefe v. Utah State Retirement Bd., 929 P.2d 1112, 1114 (Utah Ct.App. 1996), cert. granted, 939 P.2d 683 (Utah 1997); Allred v. Utah State Retirement Bd., 914 P.2d 1172, 1174 (Utah Ct.App.1996). In this case, the statute does not grant the Retirement Board such discretion, and therefore we review the Board's decision for correctness. See O'Keefe, 929 P.2d at 1115; Allred, 914 P.2d at 1174. "Under the correction-of-error standard, this court affords no deference to the agency's interpretation or application of statutory terms." Allred, 914 P.2d at 1174.

## ANALYSIS

■■■ The proper interpretation of section 49-5-704 presents an issue of first impression. The section, as phrased when the Retirement Board rendered its decision, provided as follows:

1. It is uncontroverted that the Salt Lake City Fire Department has opted out of the federal Social Security system. Ms. Epperson is consequently not entitled to Social Security benefits by virtue of the petitioner's employment with the Fire Department.

2. The petitioner also argues that the Retirement Board erred when it refused to admit a state legislator's testimony offered as evidence of legislative history and intent. Because we decide this case based upon the plain language of the statute, we need not reach the issue of whether such testimony actually constitutes admissible legislative history.

(1)(a) Except as provided in Subsection (3), the death benefit payable to a dependent spouse after death of the retirant is a monthly amount equal to 75% of the allowance being paid to the retirant at the time of death. . . .

. . . .

(3)(a) In the event of a court order complying with Section 49–1–609, a former spouse of a retired member is entitled to the court designated share of the retirant's monthly retirement benefit and the court designated share of the spouse's death benefit.

(b) This subsection supersedes conflicting subsections of this section.

Utah Code Ann. § 49–5–704 (Supp.1996).[3]

The Retirement Board determined that under section 49–5–704 a retirant's former spouse is entitled to a spousal death benefit only if the retirant is remarried at the time of the retirant's death. More specifically, the Board asserts that the only effect of section 49–5–704(3) is to allow for the split of a spouse's death benefit otherwise payable, and that such a split can only occur if the benefit first exists under section 49–5–704(1)(a). For the spousal death benefit to exist at all, the Board argues, the retirant must have a "spouse" at the time of his or her death and a *former* spouse is simply not a "spouse." Thus, the argument goes, if the retirant has no spouse at the time of his or her death, there is no death benefit to which the retirant's *former* spouse can lay claim. The Board contends that to read the statute oth-erwise would create a new and unfunded death benefit in former spouses.[4]

The petitioner argues that the Retirement Board erred in conditioning his former spouse's entitlement to the death benefit on his marital status at the time of his death. The petitioner contends that the plain language of section 49–5–704(3) permits a retirant's former spouse to receive benefits when a divorce court so orders in a QDRO, regardless of whether the deceased retirant is remarried at the time of his or her death. We agree with the petitioner.

█ "When interpreting statutes, this court is guided by the long-standing rule that a statute should be construed according to its plain language. Thus, where the statutory language is plain and unambiguous, we will not look beyond it to divine legislative intent." *Utah Sign, Inc. v. Utah Dep't of Transp.*, 896 P.2d 632, 633–34 (Utah 1995) (citations omitted). *Accord Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989); *Brendle v. City of Draper*, 937 P.2d 1044, 1047 (Utah Ct.App.1997); *Allred*, 914 P.2d at 1175. *See also Johnson v. Utah State Retirement Bd.*, 770 P.2d 93, 95 (Utah 1988) ("A fundamental principle of statutory construction is that unambiguous language in the statute itself may not be interpreted so as to contradict its plain meaning.").

The meaning and effect of subsection (3)(a)'s language are plain. A court hearing a domestic relations matter may order[5] that

---

**3.** Section 49–5–704 had been amended in 1994, with the amendment becoming effective July 1 of that year. The 1994 amendment added the language "[e]xcept as provided in Subsection (3)" to the beginning of subsections (1)(a) and (1)(c) and added subsection (3) in its entirety. *Compare* Utah Code Ann. § 49–5–704 (1994) *with id.* § 49–5–704 (Supp.1996). After the Retirement Board issued its order in this case, the Legislature again amended section 49–5–704. The 1997 amendment substituted "same percentage" for the second "court designated" in subsection (3)(a). *See id.* § 49–5–704(3)(a) (Supp.1997).

**4.** While the Board's theory is not without some semantic logic, it leaves the Legislature responsible for rather illogical policy objectives in adopting the 1994 amendment: A former spouse will be eligible to receive a retirant's death benefit if the retirant has remarried and remains married at the time of death. If the retirant chooses not to remarry, the former spouse cannot receive the benefit. It would be curious, indeed, if the Legislature, intending to give former spouses a benefit, were to condition the availability of the benefit on someone else's remarriage. If they had such an unusual scheme in mind, it would be doubly curious if they left it for inference rather than spelling it out quite clearly in the amendment.

**5.** The order must satisfy section 49–1–609, which, in pertinent part, states that

the retirement board shall provide for the division of a member's retirement allowance or refund of contributions upon termination to former spouses and family members pursuant to an order of a court of competent jurisdiction with respect to domestic relations matters on file with the retirement office.

a retirant's former spouse is entitled to receive some portion of the spousal death benefit, which is identified in subsection (1)(a) as a "monthly amount equal to 75% of the allowance being paid to the retirant at the time of [the retirant's] death." Utah Code Ann. § 49–5–704(1)(a) (Supp.1996). In other words, subsection (1) identifies the spousal death benefit and its amount, while subsection (3) explains how a retirant's former spouse can become entitled to the death benefit or some portion of it. Any lingering doubt about the interplay of the two subsections is definitively resolved by subsection (1)(a)'s express recognition that it applies "[e]xcept as provided in subsection (3)," and by subsection (3)(b), which explicitly states that subsection (3) "supersedes conflicting subsections of this section." *Id.* § 49–5–704(1)(a) & (3)(b).

Ms. Epperson has satisfied the single requirement of subsection (3): Following the petitioner's retirement from the Fire Department, a QDRO was issued awarding Ms. Epperson the entirety of the spousal death benefit. Ms. Epperson would therefore be entitled to the death benefit in the amount of 75% of the allowance being paid to the petitioner at the time of his death.

 Not only does the plain language of section 49–5–704 support the petitioner's position, but the petitioner's interpretation of section 49–5–704 is the only reasonable construction offered by the parties.[6] Contrary to Judge Bench's suggestion that it is wrong to consider the basic reasonableness of our interpretation of the statute, we believe doing so is an appropriate double-check on the

interpretation we conclude emerges from a straightforward reading of the statute's plain language. "It is axiomatic that a statute should be given a reasonable and sensible construction and that the legislature did not intend an absurd or unreasonable result." *State v. GAF Corp.,* 760 P.2d 310, 313 (Utah 1988) (citation omitted). *Accord Perrine v. Kennecott Mining Corp.,* 911 P.2d 1290, 1292 (Utah 1996); *Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980) (observing that "statutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and that interpretations are to be avoided which render some part of a provision nonsensical or absurd"). The Retirement Board's interpretation of section 49–5–704 is unreasonable; there is no rational justification for conditioning a retirant's former spouse's right to a death benefit upon the retirant's decision to marry someone else. This is especially true in light of the reasons supporting a former spouse's claim to the death benefit in the first place.

 For example, one rationale for permitting a retirant's former spouse to receive the death benefit is that the benefit, as a valuable component of a firefighter's pension plan, is property which accrued, in whole or in part, during the marriage and is subject to equitable distribution by the divorce court. "[P]ension or retirement benefits are a form of deferred compensation by the employer," and if the rights to those benefits were acquired during the marriage, the court must consider those benefits in equitably distributing the marital assets. *Woodward v. Woodward,* 656 P.2d 431, 432 (Utah 1982).[7] The

Utah Code Ann. § 49–1–609(3)(a) (Supp.1996). It is undisputed that the QDRO in this case satisfies section 49–1–609.

6. The fact that petitioner and respondent offer differing constructions of section 49–5–704 does not mean that the statute is "ambiguous." We have long held that "ambiguous" means capable of " 'two or more *plausible* meanings.' " *Alf v. State Farm Fire & Cas. Co.,* 850 P.2d 1272, 1274 (Utah 1993) (emphasis added) (quoting *Village Inn Apts. v. State Farm Fire & Cas. Co.,* 790 P.2d 581, 583 (Utah Ct.App.1990)). *Accord Belnorth Petroleum Corp. v. Tax Comm'n,* 845 P.2d 266, 270 n. 8 (Utah Ct.App.) (stating that when parties each offer plausible statutory interpretations, ambiguity exists), *cert. denied,* 859 P.2d 585 (Utah

1993); *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 243 (Utah Ct.App.1991) (stating "[a]n order is ambiguous if it is subject to two plausible constructions"). Here, because the Retirement Board's construction of section 49–5–704 is implausible, *see supra* note 4, no ambiguity exists despite the differing constructions offered by the parties.

7. "[T]he trial court's duty to make an equitable division of property in a divorce action 'encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived; and ... this includes any such pension fund or insurance.' " *Dogu v. Dogu,* 652 P.2d 1308, 1310 (Utah 1982) (quoting *Englert v. Englert,* 576 P.2d 1274, 1276 (Utah

Retirement Board's construction of section 49–5–704 contravenes this rationale by permitting the retirant to control, through the decision to remarry or remain single, whether his or her former spouse ever receives this property.

Further, there is nothing inherent in a retirant's decision to remarry which should suddenly entitle a former spouse to receive a death benefit to which he or she is not otherwise entitled. Such an outcome is irrational. Rather, a former spouse's claim to the death benefit springs from the former spouse's marital relationship with the retirant and not from the retirant's choice to enter into a similar relationship with another at some time in the future.

There is no rational reason for the construction offered by the Retirement Board, and we will not presume that the Legislature intended such an irrational result absent crystal-clear language indicating that it did. *See supra* note 4. The only reasonable construction of section 49–5–704 is the one offered by the petitioner. And we agree that construction is compelled by the plain language of the statute.

## CONCLUSION

Subsection (3) of section 49–5–704 permits a court to order that a retirant's former spouse is entitled to receive all or some portion of the spousal death benefit identified in subsection (1)(a) of the statute. The Retirement Board erred in construing section 49–5–704 to condition a former spouse's entitlement to the death benefit upon the retirant's remarriage at the time of his or her death. The requirements of section 49–5–704 have been satisfied in the present case and, so long as the QDRO remains unmodified, Ms. Epperson would be entitled to the spousal death benefit upon petitioner's death. Accordingly, the Retirement Board's order dismissing the petitioner's Request for Board Action is reversed, and the matter is remanded to the Board for entry of an order consistent with this opinion.

JACKSON, J., concurs.

BENCH, Judge, concurring in result:

I agree that petitioner's position is supported by the plain meaning of Utah Code Ann. § 49–5–704 (Supp.1996). First, subsection (1)(a) expressly states, "Except as provided in Subsection (3)." Next, subsection (3)(a) provides, "In the event of a court order ... a former spouse of a retired member is entitled to ... the court designated share of the spouse's death benefit." Finally, subsection (3)(b) provides, "This subsection supersedes conflicting subsections of this section." Consequently, a plain reading of the statute clearly provides death benefits for a former spouse of a retired member where a statutorily complying court order is in place.

Because we have accorded this statute its plain meaning, any commentary about relevant policy considerations or the reasonableness of our construction is unwarranted. *See Utah Sign, Inc. v. Utah Dep't of Transp.*, 896 P.2d 632, 634 (Utah 1995) ("[W]here the statutory language is plain and unambiguous, we will not look beyond it to divine legislative intent."); *see also Salt Lake Therapy Clinic v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995) (" 'When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction.' ") (quoting *Hanchett v. Burbidge*, 59 Utah 127, 135, 202 P. 377, 380 (1921)). I therefore concur only in the result.

---

1978)). *See Woodward,* 656 P.2d at 432–33 ("The essential criterion [in determining whether a resource is subject to equitable distribution] is whether a right to the benefit or asset has accrued in whole or in part during the marriage. To the extent that the right has so accrued it is subject to equitable distribution.").