2004 UT 84

BOARD OF TRUSTEES OF WASHING-
TON COUNTY WATER CONSER-
VANCY DISTRICT, Petitioner,

v.

KEYSTONE CONVERSIONS, LLC, a
Utah Limited Liability Company,
Respondent.

Keystone Conversions, LLC, a Utah Lim-
ited Liability Company, Plaintiff, Ap-
pellant, and Cross–Appellee,

v.

The Washington County Water Conservan-
cy District, an independent special dis-
trict of Washington County, Defendant,
Appellee, and Cross–Appellant.

No. 20030457.

Supreme Court of Utah.

Oct. 19, 2004.

Lewis P. Reece, N. Adam Caldwell, St. George, for plaintiff.

Barbara G. Hjelle, St. George, for defendant.

DURRANT, Justice:

¶ 1 This dispute concerns whether a "water availability fee" adopted by the Board of Trustees of the Washington County Water Conservancy District (the "Water District") constitutes an "impact fee" pursuant to the Impact Fees Act, Utah Code Ann. §§ 11–36–101 to –501 (2003). Keystone Conversions, L.L.C. ("Keystone"), a local developer in the area served by the Water District, filed a complaint asking the district court to determine that the fee charged by the Water District is an impact fee and that the Water District is thus required to abide by the terms of the Impact Fees Act by producing a fee analysis and capital facilities plan in order to justify the imposition of the fee. The district court agreed with Keystone, concluding that the Water District's availability fee is an impact fee. We reverse.

## BACKGROUND

### I. IMPACT FEES

¶ 2 Both parties ask this court to determine whether the Water District's water availability fee is an impact fee under the Impact Fees Act, Utah Code Ann. §§ 11–36–101 to –501 (2003). That Act defines an impact fee as "a payment of money imposed upon development activity as a condition of development approval." *Id.* § 11–36–

102(7)(a). " 'Development activity' means any construction or expansion of a building, structure, or use, any change in use of a building or structure, or any changes in the use of land that creates additional demand and need for public facilities."[1] *Id.* § 11–36–102(3). "Development approval" is defined as "any written authorization from a local political subdivision[2] that authorizes the commencement of development activity." *Id.* § 11–36–102(4).

¶ 3 Some years prior to the passage of the Impact Fees Act, we stated that "[i]mpact fees are generally defined as charges levied by local governments against new development in order to generate revenue for capital funding necessitated by the new development." *Salt Lake County v. Bd. of Educ.*, 808 P.2d 1056, 1058 (Utah 1991) (internal quotations omitted).[3] "Impact fees," we explained, "are a species of real estate development exactions" usually "imposed prior to the issuance of a building permit or zoning/subdivision approval." *Id.* (internal quotations omitted). We also listed "some key definitional elements of impact fees," indicating that such fees are generally imposed "pursuant to local government powers to regulate new growth and development and provide for adequate public facilities and services," are "levied to fund large-scale, off-site public facilities and services necessary to serve new development," and are generally "in an amount which is proportionate to the need for the public facilities generated by new development." *Id.* at 1058–59.

¶ 4 The regulations governing impact fees contemplate that if an entity with the power to permit or prevent certain development activities imposes a fee as a condition of proceeding with development in order to

fund public facilities and services that will be necessitated by the development, that entity must justify the imposition of the fee. For example, the Impact Fees Act requires an entity imposing an impact fee to prepare a "capital facilities plan" identifying the "demands placed upon existing public facilities by new development activity" and "the proposed means by which the local political subdivision will meet those demands." Utah Code Ann. § 11–36–201(2)(b)(i)–(ii). In addition, "[e]ach local political subdivision imposing impact fees [must] prepare a written analysis of each impact fee" that, among other things, must demonstrate the degree of impact on system improvements and proportion of cost attributed to new development activity, and must also identify how the fee was calculated. *Id.* § 11–36–201(5)(a)(i)–(iv). The Impact Fees Act also contains various other requirements governing the establishment, accounting, and process for challenging the validity of impact fees. *See id.* §§ 11–36–202 to –401.

## II. FACTUAL AND PROCEDURAL HISTORY

¶ 5 The Water District is a political subdivision of the State of Utah located in Washington County that owns and manages a secondary water system[4] (the "System") capable of providing irrigation water within the towns of La Verkin and Toquerville. The Water District serves primarily as a wholesaler of secondary irrigation water, meaning that it generally sells to municipalities and other water retailers. However, the Water District will provide service to individuals on a "retail" basis when other sources are unavailable.[5]

---

1. "Public facilities" are limited to those "capital facilities that have a life expectancy of ten or more years and are owned or operated by or on behalf of a local political subdivision or private entity" and fall into one of seven enumerated categories, which include "water rights and water supply, treatment, and distribution facilities." Utah Code Ann. § 11–36–102(12)(a).

2. The Water District is considered a "local political subdivision," which includes "a county, a municipality, or a special district created under Title 17A, Special Districts." Utah Code Ann. § 11–36–102(8)(a).

3. *Salt Lake County* was decided approximately four years prior to the passage of the Impact Fees Act. *See* Utah Code Ann. § 11–36–101 (first enacted in 1995).

4. Secondary water, as opposed to culinary water, is generally used for irrigation purposes.

5. Apparently, in addition to the water provided by the Water District, an individual seeking secondary water service can also apply to another entity, known as Toquerville Secondary Water System ("TSWS"). TSWS is organized through an interlocal cooperation agreement among To-

¶ 6 On July 17, 2001, the Water District adopted an amended version of its Final Rules and Regulations for Secondary Retail Water Service for the La Verkin Creek Area ("Final Rules"). The Final Rules outline the requirements for an individual or entity seeking to obtain secondary water from the Water District and include a fee schedule listing the applicable fees. The first item listed in the fee schedule provides that "[a]n initial water availability fee shall be due and payable for all lots within a subdivision upon request by the developer for water service, in accordance with the following fee schedule: ... 1 acre lot—$5,522" (the "availability fee").

¶ 7 On August 15, 2001, the Water District filed a verified petition in the Fifth Judicial District Court pursuant to Utah Code section 17A–2–1442, which provides that the Water District "may, in its discretion, at any time file a petition in the court, praying a judicial examination and determination of any ... act, proceeding or contract of the district." Utah Code Ann. § 17A–2–1442 (1999 & Supp. 2003). In accordance with this provision, the Water District requested the court "to determine and declare that the [Final Rules] ... do not impose impact fees under Utah Code Ann. § 11–36–101 et seq. and that the Rules are within the power of the [Water] District and constitute a valid act pursuant to a valid proceeding of the [Water] District." The Water District included a copy of its Final Rules and a fee analysis prepared by Alpha Engineering Company with the verified petition.

¶ 8 As allowed under section 17A–2–1442, Keystone, a local developer in the Toquerville/La Verkin area serviced by the Water District, opposed the Water District's petition by filing an answer. Keystone also filed a complaint seeking, among other things, that the district court find that the water availability fee is an impact fee subject to the Impact Fees Act. The district court consolidated the Water District's petition and Keystone's complaint into one action, and scheduled a hearing for October 18, 2001, which was limited by a stipulation and order to addressing

querville Town, Toquerville Irrigation Company,

only the legal question of whether or not the fee imposed by the [Water District] as part of its [Final Rules] is or is not an impact fee, leaving all other issues raised by Keystone, including ... whether the rules, as passed, are unreasonable or are arbitrary, capricious and illegal, to be addressed at a later date.

Although Keystone subsequently filed a trial memorandum on October 17, 2001, the district court refused to consider it since it was filed "fewer than 24 hours before the hearing" and "[did not] meet the requirements of the rules."

¶ 9 At the hearing, Keystone advanced two separate arguments in favor of a finding that the availability fee constituted an impact fee. First, Keystone argued that in order to be connected to the Water District's System, Keystone was required by the Final Rules to build a secondary water structure on its own property for which it needed written approval from the Water District. Keystone reasoned that this construction constituted development activity and argued that, because it was required to pay the Water District's availability fee prior to gaining the Water District's approval, the fee constituted "a payment of money imposed upon development activity as a condition of development approval" and was therefore an impact fee. In the alternative, Keystone argued that the availability fee could be considered an impact fee because it was a necessary predicate to Toquerville's subdivision development approval. Keystone argued that because Toquerville requires a developer to have a secondary water system in place before it will give subdivision approval, and because Keystone would need to pay the Water District's availability fee in order to obtain secondary water service from the Water District, the fee was "imposed upon development activity as a condition of development approval" and should be considered an impact fee.

¶ 10 On January 15, 2002, the district court ruled on the verified petition, finding that the Water District's availability fee "does constitute an impact fee under the Impact Fees Act." In so doing, the court agreed with

and the Water District.

Keystone's first argument but rejected Keystone's alternative argument. After the court's ruling and subsequent judgment on the matter, Keystone filed a motion to alter judgment, seeking to have the court reconsider Keystone's alternative argument. Keystone attached a number of exhibits to its motion, including the affidavits of several legislators purporting to state the legislative intent of the Impact Fees Act. The court denied Keystone's motion and certified the decision as final pursuant to Utah Rule of Civil Procedure 54(b).

¶ 11 Keystone appeals the district court's rejection of its alternative argument. Keystone also requests attorney fees. The Water District cross-appeals the court's determination that the availability fee constitutes an impact fee under Keystone's first argument. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## STANDARD OF REVIEW

■ ¶ 12 The district court's ruling in this matter is in the nature of a declaratory judgment. "The standard of review used in reviewing a district court's legal conclusions in an entry of declaratory judgment is the same standard used in reviewing a summary judgment. That is, we review the district court's conclusions of law for correctness." *Bd. of Educ. v. Ward*, 1999 UT 17, ¶ 8, 974 P.2d 824.

## ANALYSIS

¶ 13 We will first address the Water District's cross-appeal with respect to the district court's conclusion that the availability fee is an impact fee under Keystone's first argument. We will then address Keystone's appeal of the district court's ruling with regard to Keystone's alternative argument.

## I. THE WATER DISTRICT'S FINAL RULES DO NOT IMPOSE IMPACT FEES

¶ 14 The district court's determination that the Water District's availability fee is an impact fee is based on its interpretation of the Impact Fees Act read in conjunction with the Water District's Final Rules. The Final Rules outline the procedure for obtaining secondary water service from the Water District and require that before any applicant within the Water District's service area may connect to the Water District's System, the person must "first make application to [his or her] community for retail water service." The applicant may only apply for service from the Water District if the applicant's "community," i.e., the municipality in which the applicant's property is located, "is unable to provide retail water service to the applicant," and the applicant provides written proof of such inability to the Water District. The applicant must then sign a Water Application and Agreement, which includes a number of terms and conditions, including the payment of fees. Of the three fees included in the attached fee schedule, Keystone contests only the "initial water availability fee" of $5522 per one acre lot.

¶ 15 In applying for secondary water service from the Water District, the applicant also agrees to be responsible to "construct and install at his sole expense" any necessary pipelines, delivery lines, or other fixtures in order to obtain water from the Water District's facilities. The Final Rules provide that any of these "additions or extensions to the [Water District's] System shall be ... approved in writing by the [Water] District's engineers," and that "all new constructions or additions to the System must be inspected and approved by the [Water] District during installation." The Water District distances itself, however, from matters of development approval, stating that it "does not authorize development activities, whether by approval of subdivision plats, issuance of building permits, or otherwise," and that it "does not intend to impose any payment of money upon development activity as a condition of development approval in connection with provision of water."

¶ 16 Based on these provisions, the district court agreed with Keystone that the Water District's availability fee is an impact fee because it constitutes "a payment of money imposed upon development activity as a condition of development approval" under the Impact Fees Act. Specifically, the court adopted Keystone's argument that (1) "the [Water] District ... is a local political subdi-

vision [that] owns and operates a secondary water system, which includes public facilities for 'water supply, treatment, and distribution' "; (2) if Keystone wants to connect to the Water District's system, it will be required to build the necessary pipelines, etc., and this "construction of a 'subdivision secondary water system' is 'construction or expansion of a ... structure ... that creates additional demand and need for public facilities' and is, therefore, a development activity"; (3) "the [Water] District requires Keystone to obtain the [Water] District's written authorization, or development approval, before commencing construction of a secondary water system for Keystone's property if it is to be connected to the [Water] District's system"; and (4) "Keystone must pay the [Water] District's availability fee as a condition of obtaining the [Water] District's development approval."

¶ 17 The second point, regarding whether Keystone's construction of a secondary water system on its own property actually "creates additional demand and need for public facilities," was particularly disputed by the parties. The district court concluded that this construction would create "additional demand and need for the public facilities constituting the [Water] District's secondary water system." The court explained its reasoning as follows:

> Even if the [Water] District had so much existing service capacity that it could absorb new connections without expanding its system, any construction of new subdivision facilities which were to be connected to the [Water] District's system would create additional *demand* on the [Water] District's system. Without such excess capacity, any new connections would create additional *need* for public facilities to be added to the [Water] District's system. This would be true of any applicant's construction of a secondary water system on its own property.

Thus, the district court determined that, "[i]n this sense, the [Water] District's availability fee does constitute an impact fee under the Impact Fees Act."

¶ 18 In its cross-appeal, the Water District argues that the district court erred in finding

that the availability fee is an impact fee. First, the Water District contends that the court based its ruling on improper evidence because it relied, in part, upon evidence introduced in Keystone's trial memorandum, which was improperly submitted only one day before the hearing. Second, the Water District argues that the ruling does not comport with the language of the Impact Fees Act, contending specifically that the development activity defined by the district court does not create "additional demand and need for public facilities." We address these arguments in turn.

### A. The District Court's Ruling Does Not Rely on Improper Evidence

■ ¶ 19 The Water District argues that the district court based its ruling on facts not in evidence. The Water District asserts that, in making its determination, the court was limited to considering the Water District's verified petition with its attached exhibits. The Water District objects to the ruling to the extent that it is based on any of the facts or evidence presented in Keystone's trial memorandum, which the district court expressly stated it would not consider since the memorandum was filed "fewer than 24 hours before the hearing" and "[did not] meet the requirements of the rules." Further, the Water District contends that there are other "facts" on which the court based its ruling that are unsupported even by the trial memorandum and its attached exhibits. This challenge presents an issue of law, which we review for correctness. *State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 20 In its marshaling section, the Water District lists those facts that it believes the district court inappropriately considered. In particular, the Water District objects to any reference to its actions prior to the adoption of the Final Rules, during which it allegedly referred to its fees as "impact fees" and drafted a "Development Impact Fee Analysis" and "Capital Facilities Plan." The Water District indicates that these facts were inappropriately taken from the trial memorandum. The Water District also objects to the court's determination that, depending on the amount of the Water District's service capac-

ity, any new connections to the Water District's system would create "additional demand" and potentially create "additional need for public facilities." The Water District states that this "finding" by the district court has no evidentiary support.

¶ 21 In the hearing transcript, the district judge clearly stated that he would not consider Keystone's trial memorandum. Therefore, we agree with the Water District that if there are disputed factual issues, for which the Water District had no opportunity to present evidence and on which the district court relied in making its ruling, the district court would likely be precluded from considering those facts in making its determination. However, the facts to which the Water District objects either do not form the basis of the lower court's ruling, or are not really "factual findings" that require an evidentiary foundation. Rather, it appears that this portion of the district court's ruling is based solely on the court's interpretation of the Impact Fees Act, the Water District's Final Rules, and the verified petition, each of which the parties agree was properly before the district court.

¶ 22 For example, the allegations that the Water District referred to the fees as "impact fees" prior to the adoption of the Final Rules, though listed in the "Facts" section of the district court's ruling, do not form the basis for the court's ultimate determination that the availability fee is an impact fee under the language of the statute. Further, the statement concerning whether connections to the District's System will create additional "demand" or "need" does not appear to be an assertion of fact, but rather, expresses the court's reasoning based on the court's interpretation of the terms "demand" and "need" in the statute and logical assumptions about what would happen in the event that "someone" requests connection to the Water District's System. The Water District argues that the court was not justified in making these assumptions, contending that "[n]othing in Keystone's unfounded allegations suggest[s] that there might be even one

connection to the [Water] District's [S]ystem, much less enough applicants to impact that system." However, in evaluating whether the Final Rules impose impact fees, it was reasonable for the Water District court to assume, for purposes of the declaratory judgment, that someone would apply for connection to the Water District's System. Implied in the Water District's claim for relief is that the Water District itself was anticipating that individuals would seek to be connected to its system and be required to comply with the Final Rules. Thus, the district court did not base this portion of its ruling on any improper evidence.

### B. The Water District's Availability Fee Is Not an Impact Fee

¶ 23 The Water District argues that even if the district court based its ruling on proper evidence, the court erred in holding that the availability fee constitutes an impact fee pursuant to the statutory definition in the Impact Fees Act. The Water District bases its argument mainly on its interpretation of what constitutes "development activity" under the Act. The Water District argues that a property owner's construction of a secondary water system on its own property for connection to the Water District's System does not, contrary to the holding of the district court, create the kind of "additional demand and need for the public facilities" contemplated by the Impact Fees Act. The Water District asserts that the court must focus on the "authorization that creates the requirement for public facilities," which in this case, the Water District maintains, is Toquerville's authorization for the subdivision generally. The Water District contends that it is the construction of a subdivision that creates a demand for public facilities, and that the construction of a secondary water system on a developer's property merely serves that demand. In other words, the construction of a secondary water system, in and of itself, does not create any additional demand for public facilities.[6] We agree with the Water District.

6. The Water District also argues that because it only extends retail water service to developers on a voluntary basis, an applicant's request for ser-

vice will not necessarily create any additional need for the Water District's public facilities. The Water District asserts that, if any portion of

¶ 24 As stated above, an impact fee is a fee charged as a condition of authorization for the commencement of defined development activities when those activities create demand and need for public facilities. Utah Code Ann. § 11–36–102(3), (7). The argument that the construction of pipelines, hydrants, and other structures on a developer's property is an activity that "creates additional demand and need for public facilities" is strained at best, particularly where that construction is meant to fulfill the demand and need generated by the development of the property. A more accurate characterization is that the construction of a secondary water system acts as a conduit to serve the demand and need for public facilities that necessarily results from the development of a new subdivision.

¶ 25 Moreover, even if we agreed with the district court that the construction of a secondary water system on a developer's property creates additional demand and need sufficient to constitute "development activity," the nature of the Water District's authorization to construct the secondary system does not amount to "development approval" for purposes of the Impact Fees Act. Development approval is defined as "any written authorization from a local political subdivision *that authorizes the commencement of development activity." Id.* § 11–36–102(4) (emphasis added). As we stated at the outset, the Impact Fees Act contemplates that if an entity with the power to permit or prevent certain development activities imposes a fee as a condition of proceeding with development in order to fund public facilities and services that will be necessitated by the development, then that entity must satisfy the various requirements of the Impact Fees Act.

¶ 26 While the Water District's Final Rules require that any "additions or extensions to [its][s]ystem" must be "approved in writing by the [Water] District's engineers," such

approval is not a necessary predicate to a developer's construction of a secondary water system on its own property. Indeed, the Water District neither authorizes the actual construction of a secondary water system, nor has the power, as would a city, to stop a developer from constructing such a system if the developer so desires. The Water District is not in the same position as Toquerville, or another municipality with the power to grant or deny building permits, with respect to construction activities. Although a developer would need the Water District's written approval if he or she desires to connect to the Water District's System, a developer does not require the Water District's approval in order to build on its own property. Consequently, any approval given by the Water District does not actually "authorize the commencement of development activity."

¶ 27 Therefore, we hold that the availability fee charged by the Water District does not constitute an impact fee as defined by the Impact Fee Act. We express no opinion as to whether the Water District's fee is reasonable or whether it conforms to other legal requirements.

## II. KEYSTONE'S ALTERNATIVE ARGUMENT IS NOT RIPE FOR REVIEW

¶ 28 Having determined that the availability fee is not an impact fee based on Keystone's first argument before the district court, we next consider whether the court erred in rejecting Keystone's alternative argument, which is outlined in the court's ruling as follows:

> Keystone's alternative argument is that (i) Toquerville will not approve Keystone's subdivision development activity unless Keystone has a secondary water system, (ii) the [Water] District has the only secondary water system from which Keystone could obtain service, (iii) the [Water] Dis-

---

its system were to be completely allocated, it could simply "choose not to add to its system to replace that capacity." Thus, "the [Water] District can choose to allocate capacity in its system," and "such an allocation does not require that additional capacity be created to replace the capacity so allocated." The resolution of this

issue turns on the characterization of what constitutes additional "need" and factual questions as to the Water District's service capacity and its allocation of that capacity. The basis of our ruling today, however, makes it unnecessary for us to resolve these issues.

trict will not allow Keystone to obtain service unless Keystone pays the availability fee, and (iv) the statutory definition of "impact fee" as one imposed "as a condition of development approval" does not require that the fee be demanded by or paid to the body giving the development approval.

The district court determined that this argument "[did] not appear to be sound" because [i]f Keystone's "development activity" is the subdivision generally, and if Keystone must apply to the [Water] District for service because no other such service is available and that service is a condition of Toquerville's approval of Keystone's subdivision, the [Water] District's approval of Keystone's application is a necessary predicate to Toquerville's approval of the subdivision but it is not a "written authorization . . . that authorizes the commencement of development activity" and, therefore, the [Water] District's approval is not "development approval."

The district court noted that "there could be many other government approvals, certifications, and licenses [such as a contractor's or a business license], which are necessary predicates to obtaining Toquerville's approval of Keystone's subdivision, but the fees therefore are not 'impact fees' just because Toquerville's approval cannot be obtained unless the developer pays them."

¶ 29 We do not reach the merits of Keystone's alternative argument because Keystone has failed to point to sufficient evidence in the record that provides any basis for that argument. In fact, we can find no basis in the record whatsoever to substantiate the first two points of Keystone's argument; namely, that (1) "Toquerville will not approve Keystone's subdivision development activity unless Keystone has a secondary water system," and (2) "the [Water] District has the only secondary water system from which Keystone could obtain service."

¶ 30 In an attempt to substantiate the first of these claims, Keystone cites to an exhibit attached to its motion to alter judgment.

This exhibit, a purported Toquerville town ordinance, does not reference a "secondary water system." Rather, the portion cited by Keystone states that "[e]ach subdivider shall provide water, deliverable to Toquerville's municipal water system in sufficient quantity and in such a manner so as to supply the water service needs of his subdivision," and that "[b]uilders who are unable to provide sufficient water to the *culinary system* shall fund the efforts of the Town to . . . develop sufficient water." (Emphasis added.) The Water District asserts that "had these matters been considered in an evidentiary hearing," the Water District could have shown that "Toquerville regularly grants subdivision approval without any secondary water commitment to the subdivision."[7]

¶ 31 In addition to establishing what Toquerville requires with regard to its development approval, Keystone also needed to provide some evidence that "the [Water] District has the only secondary water system from which Keystone could obtain service." Other than Keystone's allegations in its trial memorandum and motion to alter judgment, this statement finds no support in the record. In fact, it appears that Keystone may be able to obtain service from Toquerville Secondary Water System, or from the town of Toquerville itself.

¶ 32 In a declaratory action such as this one, a party seeking a declaration of rights must show the existence of "(1) a justiciable controversy, (2) parties whose interests are adverse, (3) a legally protectible interest residing with the party seeking relief, and (4) issues ripe for determination." *Miller v. Weaver*, 2003 UT 12, ¶ 15, 66 P.3d 592 (citing *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983)); *see also Baird v. State*, 574 P.2d 713, 715 (Utah 1978). Keystone's alternative argument presents an issue that is not ripe for review.

Ripeness occurs when "a conflict over the application of a legal provision [has] sharpened into an actual or imminent clash of legal rights and obligations between the

---

7. The Water District does concede that Toquerville requires a secondary water *system* (pipes, valves, etc.) to be in place for subdivision approv-al, but states that Toquerville does not require that a developer have any commitment for water *service.*

parties thereto." *Redwood Gym v. Salt Lake County Comm'n,* 624 P.2d 1138, 1148 (Utah 1981). "Where there exists no more than a difference of opinion regarding the hypothetical application of [a provision] to a situation in which the parties might, at some future time, find themselves, the question is unripe for adjudication." *Id.*

*Boyle v. Nat'l Union Fire Ins. Co.,* 866 P.2d 595, 598 (Utah Ct.App.1993). Even if we were to agree with Keystone's argument that, in its suggested scenario, the Water District's availability fee is an impact fee, Keystone has provided no evidence to show that such a situation currently exists. Thus, we decline to reach the merits of Keystone's alternative argument and do not address whether the availability fee would constitute an impact fee under the hypothetical situation suggested by Keystone.[8]

### III. ATTORNEY FEES

¶ 33 Keystone also requests attorney fees in this matter pursuant to Utah Code section 11–36–401(5), which states that "[t]he judge may award reasonable attorneys' fees and costs to the prevailing party in any action brought under this section." Utah Code Ann. § 11–36–401(5) (2003). Given our determination that the Water District's availability fee is not an impact fee, Keystone is no longer the "prevailing party" in this action and is not entitled to attorney fees under section 11–36–401. *See Ault v. Holden,* 2002 UT 33, ¶ 48, 44 P.3d 781; *Kearns–Tribune Corp. v. Salt Lake County Comm'n,* 2001 UT 55, ¶ 34, 28 P.3d 686.

---

8. In its brief on appeal, Keystone makes an additional argument that is related to but separate from its alternative argument outlined above. On appeal, Keystone continually makes reference to a "pass-through fee" that is supposedly collected by Toquerville City and passed on to the Water District. Keystone begins its written argument with the statement that "[t]he fee collected by Toquerville and passed through to the water district is a fee collected as a 'condition of development approval' within the meaning of the impact fee statute." This characterization of the facts is both confusing and misleading. As outlined above, this type of fee is not the fee that the district court considered. In the hearing below, neither the parties nor the court ever referenced a fee collected *by Toquerville.* Rather, the Water

### CONCLUSION

¶ 34 We reverse the ruling of the district court and hold that the availability fee charged by the Water District is not an impact fee under the Impact Fees Act. We express no opinion as to whether the fee is reasonable or comports with other requirements of the law. Furthermore, because it is unripe for adjudication, we decline to address Keystone's contention that the district court erred in rejecting its alternative argument. Reversed.

¶ 35 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.

District court's ruling addressed only the fees collected *by the Water District* as part of its Final Rules. Thus, Keystone raises this "pass-through fee" argument for the first time on appeal. Absent plain error or extraordinary circumstances, we do not address issues raised for the first time on appeal. *State v. Lopez,* 886 P.2d 1105, 1113 (Utah 1994) ("The general rule is that issues not raised at trial cannot be argued for the first time on appeal...."). Moreover, Keystone has provided no evidence, and there is no support in the record, for the proposition that Toquerville collects a fee that is then passed through to the Water District as a condition for any development approval. Therefore, it appears that Keystone again raises a hypothetical scenario that is not ripe for adjudication.